UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PAINTERS DISTRICT COUNCIL NO 58, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:14CV01812 ERW |
| RDB UNIVERSAL SERVICES, LLC, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiffs' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a) and (c), and Defendants' Demand for a Jury Trial.

## I. BACKGROUND

Plaintiffs represent a multi-employer pension plan, welfare pension plans, a vacation plan, an apprenticeship plan, and a labor organization. Plaintiff Painters District Council No. 58 (the Union) is a labor organization within section 2(5) of the National Labor Relations Act (NLRA), 29 U.S.C. §152(5), representing employees in an industry affecting commerce, and is an employee organization within the meaning of section 3(4) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1002(4). [ECF No. 49 ¶ 1]. Plaintiffs the Painters Council No. 2 Pension Trust (Pension Trust); Painters District Council No. 2 Welfare Trust (Welfare Trust); Painters District Council No. 2 Vacation Trust (Vacation Trust); Painters District Council No. 2 Apprenticeship and Journeyman Training Trust (Apprenticeship Trust), collectively known as the PDC Trusts, are all employee benefit plans under Section 3(3) and 502 (d)(1) of ERSIA. 29 U.S.C. §§ 1002(3), 1132(d)(1). [ECF No. 49, ¶¶2-5].

1

Defendant RDB Universal Services, LLC, (RDB) is a general contracting company licensed to do business in Missouri, and Defendants Relder Berry and Deloris Berry, collectively the Berrys, are husband and wife, associated with RDB, with Deloris serving as President of RDB Universal. [ECF No. 49, ¶5].

*A. Undisputed facts for the purpose of Summary Judgment*

While significant facts remain in dispute, the Court finds the following facts undisputed for the purposes of this motion. Deloris Berry, acting as an agent for RDB, signed a collective bargaining agreement (hereinafter the 2010 CBA) with the Union, and the Painting and Decorating Contractors of America on (PDCA) on April 15, 2013. [ECF No. 49 ¶ 6]. The 2010 CBA's initial term expired on August 31, 2013. [ECF No. 49-4 at 27]. A second collective bargaining agreement (the 2013 CBA), Plaintiffs purport is in effect between 2013-2016. [ECF No. 49 ¶ 6, No. 49-5]. The 2013 CBA is unsigned by either party, and Defendants deny being bound by it. [ECF No. 56 ¶ 6, No. 49-5]. Both CBAs require RDB to pay certain contributions, based on the number of employee work hours to be paid the PDC trusts, and to submit contribution report forms to the Union. [ECF No. 49 ¶¶ 11-12]. RDB maintained some contractual relationship with the union until at least October 30, 2015, when it notified the Union it was cancelling its contractual relationship. [ECF No. 60 ¶ D13]. While the 2010 CBA was in effect, the Union was the exclusive bargaining representative of RDB employees. [ECF No. 56 ¶ 9].

Some RDB employees performed bargaining unit work as described in the 2013 CBA. [ECF No. 56 ¶ 8]. Both CBAs required RDB to make specific contributions to PDC trusts and other union entities based on the number of hours worked by union employees. [ECF No. 49 ¶¶ 22, 23]. RDB submitted such reports up until the time of the lawsuit. [ECF No. 49 ¶ 21].

Both CBAs require RDB to pay liquidated damages and attorneys' fees in the event of a breach. [ECF Nos. 56 ¶¶ 25, 26; 49-4; 49-5]. Both CBAs also bind RDB to the PDC trust agreements. [ECF No. 56 ¶ 27]. RDB's contributions to the PDC trust funds have been late, and at times RDB was in arrears to the union. [ECF Nos. 56 ¶ 15; 56-4 ¶¶16-17].

Deloris Berry and Relder Berry, as individuals, each signed a document labeled "Guaranty of Payment of Wages, Dues Remissions, Fringe Benefit Contributions and other miscellaneous payments", around the same time Deloris Berry signed the 2010 CBA. [ECF No. 56 ¶ 29]. Deloris and Relder Berry do not have a contractual relationship with the PDC Trusts in their individual capacities. [ECF No.49 ¶ 33]. At this time Deloris and Relder Berry individually have not paid any amounts to Plaintiffs. [ECF No. 49 ¶ 31].

Plaintiffs hired Grabel, Schnieders & Hollman, PC to perform an audit of RDB's earnings records, payroll tax reports, cash disbursement records and payroll. Plaintiffs have the right to do such an audit. [ECF No. 49 ¶¶ 28, 34]. Charles Kinder, a payroll auditor with the firm, performed the audit after RDB provided documents, and Defendants were provided an opportunity to review the audit. [ECF No. 49 ¶¶ 35, 38, Kinder Affidavit ¶ 2].

RDB entered into joint check agreements with the Union, where general contractors who had hired RDB as subcontractors would pay union checkoff dues directly to the union. [ECF No. 60 ¶¶ D1, D2].[1] RDB attempted to have its union employees agree to have certain amounts withdrawn from their paycheck, in order to correct double payments mistakenly made to the union employees and the PDC Trusts. [ECF No. 56 ¶ D7]. RDB stopped these attempts after Paige Lux,

---

[1] Defendants did not submit a separate filing in order to submit their own statement of uncontroverted facts, and instead submitted their facts at the end of their response to Plaintiffs' Statement of Uncontroverted Facts. They did not continue Plaintiffs numbering, but rather restarted the numbering of their facts at the number 1. To avoid confusion between Plaintiffs' and Defendants' uncontroverted facts, Defendants facts will be labeled as D1-D13.

the business manager for the Union, demanded RDB stop its attempts at repayment. [ECF No. 56 ¶ D9].

## II. STANDARD OF REVIEW

Summary Judgment is proper only if there exists "no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. of Civ. Proc. 56(c); *Bores v. Domino's Pizza, LLC*, 530 F3d 671, 674 (8th Cir. 2008). The burden of proof is on the party moving for summary judgment, and all facts and reasonable inferences are to be viewed in the light most-favorable to the non-moving party. *Duluth, Winnipeg and Pacific Ry. Co. v. City of Orr*, 529 F.3d 794, 797 (8th Cir. 2008). "Although the moving party has the burden of demonstrating the absence of genuine issues of material fact, 'the nonmoving party may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial.'" *Burchett v. Target Corp.*, 340 F.3d 510, 516 (8th Cir. 2003) *quoting Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1107 (8th Cir.1998).

Material facts are determined by substantive law, and factual disputes which are irrelevant or collateral do not preclude Summary Judgement. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986). A dispute is a genuine issue, where the evidence is such a reasonable jury could return a verdict for the nonmoving party. *Id*. at 248.

## III. DISCUSSION

Plaintiffs move for Summary Judgment on all claims, including Defendants' counterclaims. Plaintiffs' have alleged claims for damages against RDB Universal, Relder Berry, and Deloris Berry for damages resulting from a failure to pay unpaid fringe benefit contributions, union dues, interest, liquidated damages, attorneys' fees and costs. Defendants counterclaim for alleged double

payments and make state law claims of money had and received, breach of contract, and tortious interference with a contract or business expectancy.

A. *Plaintiff's claim for summary judgment on their claims for payments of unpaid fringe benefit contributions, union dues, interest, liquidated damages, attorneys' fees and costs.*

Plaintiffs move for Summary Judgment on their claim, and argue summary judgment is appropriate because: RDB is liable to the Plaintiffs on one of multiple theories of liability; Deloris Berry and Relder Berry are personally liable through a guaranty agreement; Plaintiffs are entitled to Summary Judgment for a certain amount of principal damages; Plaintiffs should be allowed to submit a subsequent memorandum regarding other damages, such as attorneys' fees; and finally, Plaintiffs should be allowed to submit a subsequent memorandum on additional damages discovered in subsequent audits. [ECF No. 50 at 4-10]. Defendants respond any damages are inaccurate and unsubstantiated; there are issues relating to the execution and enforceability of the CBAs; and Deloris Berry and Relder Berry do not have personal liability. [ECF No. 57 at 2-13].

1. *RDB's liability*

Plaintiffs claim they are entitled to Summary Judgment on RDB's liability in three separate ways. First, Plaintiffs argue RDB is liable because it is bound to the CBA, which incorporates the PDC trusts. [ECF No. 50 at 4-5]. Second, Plaintiffs contend RDB is liable for principal damages to the PDC trusts through ERISA, and to the Union under the Labor Management Relations Act (LMRA). [ECF No. 50 at 5-6]. Third, Plaintiffs assert RDB is liable for liquidated damages, interest, attorneys' fees and other costs on the principal obligation as applied to both the Union's claim and the PDC Trusts' claim. [ECF No. 50 at 6-8]. In respect to RDB's liability, Defendants first argue the damages alleged are inaccurate and unsubstantiated, and seek to organize the damages into audit amounts, post-audit amounts, liquidated damages, attorneys' fees, and a

5

damage summary. Defendants also argue the 2013 CBA is not binding, as issues exist to the execution, existence and enforceability of that agreement. Plaintiffs respond to these arguments by further asserting: RDB's liability to the PDC trusts and the Union are established as a matter of law; and there is no material dispute for liability under the 2013 CBA.

### a. Liability of RDB under a CBA

Plaintiffs begin their claims by arguing RDB is liable to Plaintiffs because RDB is bound by a CBA. Plaintiffs allege the Union and RDB negotiated the 2013 CBA, and although the 2013 CBA is unsigned, RDB has through their conduct and statements adopted the 2013 CBA. [ECF No. 50 at 4-5]. Alternatively, Plaintiffs plead, even if RDB has not accepted the 2013 CBA, it is still bound through the 2010 CBA through an evergreen clause present in the 2010 CBA. [ECF No. 61 at 3-6]. Defendants in their response argue, RDB has not substantially complied with the 2013 CBA, and as such has not accepted this agreement through their conduct; the 2013 CBA is void because RDB, as an employer, may not contribute to a pension plan without a written agreement, and the 2010 CBA has ended. RDB alleges it was within their rights to institute unilateral changes to the terms and conditions of employment, as the 2010 CBA had lapsed. [ECF No. 57 at 11-12].

Plaintiffs reply, RDB is bound to the 2013 CBA through its own statements, and failure to produce a signed 2013 CBA does not prevent an agreement from being reached; RDB is unable to use a void defense under the jurisprudence of 29 USC § 1145; no CBA lapsed and cases cited by RDB are inapplicable; and, finally, RDB is bound by the 2010 CBA, as other courts have determined parties are bound by similar parties to CBAs on similar facts. [ECF No. 61 at 3-6].

First, Plaintiffs assert RDB accepted the 2013 CBA through their own conduct, by completing and submitting contribution reports to the Plaintiff's third party administrator acknowledging the CBA, and these contribution reports showed RDB paid a new hourly rate

present in the 2013 CBA. [ECF No. 50 ¶ 4]. Defendants respond, by pointing out Plaintiffs'

motion for summary judgment claims RDB does not comply with the CBA, did not submit

contribution reports, and did not pay the requested contributions. [ECF No. 56 ¶ 10].

Plaintiffs point out the United States Court for the Eastern District has previously found

Summary Judgment is appropriate on the issue of binding a company to a CBA where courts have

found paying increased fringe benefit contribution, and agreeing to language in computer software,

before submitting reports in a similar case. *Carpenters' Dist. Council of Greater St. Louis v.*

*Ortmann Stair Co.*, Inc., 4:08-cv-1288-DJS, 2009 WL 3763089 (E.D. Mo. Nov. 10, 2009). The

present case is distinguished, because in *Ortmann Stair*, Defendants did not respond to Summary

Judgment, and therefore no facts were in dispute. Here Defendants in their response to Summary

Judgment create genuine issues of material fact.

Plaintiffs also contend Defendants accepted the contract by submitting contribution report

forms to the third party administrator that stated "the preparation and submission of this report

evidence[s] our agreement to make contributions in accordance with the *existing collective*

*bargaining agreement* of the Painters District Council No. 2." (emphasis added) [ECF No. 49-23 at

10-12]. The Court disagrees with this contention, although this language is evidence of an

agreement, it is not evidence of which collective bargaining agreement controls.

Plaintiffs next contend RDB is bound to the 2013 CBA through its own statements. RDB,

through its deposition, acknowledged it is bound to a CBA, although not necessarily the 2013

CBA. [ECF No. 56-3 at 20-22, 27-28; No. 49-17 at 4-5]. The Court is not persuaded by Plaintiffs'

argument RDB has assented to the agreement, merely because as part of the electronic payment

processes, it needed to submit reports. Multiple times, through its own statements, RDB has

affirmed it is bound to a CBA, or it received a copy of the CBA. [ECF No. 56-3 at 20-22, 27-28;

No. 49-17 at 4-5]. All RDB has acknowledged, through its conduct and statements, is it is bound to a CBA, not a specific CBA, as each reference does not mention the 2013 CBA. Based on these facts, it appears a reasonable fact finder could determine a CBA is in effect, that it might be the 2010 CBA or it could conclude the 2013 CBA is in effect.

Plaintiffs for the first time in their reply brief, contend, even if Defendants did not agree to 2013 CBA, they are still liable under the 2010 CBA because of the evergreen clause in the 2010 CBA which continues the CBA from year to year until a new agreement is reached, or the current agreement is disavowed in writing. [ECF No. 49-4 at 27]. "Where new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the movant an opportunity to respond." *Sowers v. Gatehouse Media Missouri Holdings, Inc.*, No. 4:08CV633 TIA, 2010 WL 1633389, at *2 (E.D. Mo. Apr. 22, 2010). It is generally improper to raise a new argument in a reply brief. *Fed. Trade Comm'n v. Neiswonger,* 580 F.3d 769, 775 (8th Cir.2009).

While these arguments are disfavored, the court will allow this argument for two reasons. First, the 2010 CBA was presented with Plaintiffs' initial motion in support of summary judgment. [ECF No. 49-4 at 27]. Second, the Defendants admit they have received this contract and are bound to a collective bargaining agreement. However, the Court takes notice of the differences between the 2010 CBA and the 2013 CBA, and determines summary judgment is improper on all issues of damages as the two CBAs are different. Therefore, the Court concludes summary judgement is not appropriate, as a reasonable fact finder could come to multiple outcomes in regards to the effect of the 2013 CBA.

Defendants also argue two defenses to the CBAs. Defendants argue the CBA is void, and the CBA had lapsed, and therefore RDB was free to implement unilateral changes in conformity with prior offers to the terms and conditions of employment. [ECF No. 57 at 10-11].

Defendants first argue the CBA is void, and as such does not bind them. Courts have held many contract defenses provided at common law, are unavailable as defenses to a CBA, but a void defense is still available. *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir. 1990). A void contract is defined as "A contract that is of no legal effect, so that there is really no contract in existence at all." Black's Law Dictionary (10th ed. 2014). A contract may be void for illegality. *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 87 (1982). An employer's required contributions and the details of such a plan must be in writing under the Labor Management Relations Act. 29 USC § 186(c)(5)(B); see *Arroyo v. United States*, 359 U.S. 419, 425-426 (1959) (interpreting the LMRA to determine it is a criminal violation to contribute to a plan without a written agreement).

Defendants misinterpret the law and are not entitled to a void defense. RDB signed the 2010 CBA incorporating the PDC trusts, and continued to submit contribution reports evidencing an obligation to the CBA up until 2015. [ECF No. 60 at ¶ 40]. This is not an unwritten agreement as discussed in *Arroyo* or the LMRA, and therefore the defense is inapplicable. Defendants may be bound to the 2010 CBA, and while a reasonable fact finder may make multiple conclusions about the 2013 agreement, there is a written CBA in place. It is not illegal for Defendants to continue to contribute to the PDC trusts, and therefore a void defense here is inapplicable and Defendants reliance on it is rejected.

Defendants next argue RDB was entitled to impose unilateral changes to the CBA in conjunction with prior offers, as the CBA had lapsed. When an employer has bargained in good

faith with a union to an impasse, it may institute unilateral changes to the CBA in conformity with prior offers made to the union. *NLRB v. Katz*, 369 U.S. 736,745 (1962). In a lapsed CBA, the CBA can be extended, but this does not mean the entire contract is extended. *Gen. Warehousemen & Emp. Union Local No. 636 v. J. C. Penney Co.*, 484 F. Supp. 130, 134 (W.D. Pa. 1980).

Defendants however have not set forth any allegations of fact, showing they bargained in good faith with the union to an impasse. The only contention of fact, which might be considered an attempt to bargain, was RDB's attempts to recover its alleged double payments made in its counterclaims. [ECF No. 56 at ¶D7-D9]. This alone is not the type of good faith bargaining discussed in *Katz* or *J.C. Penney Co.*, where union and employer representatives were meeting with each other in order to renegotiate a CBA. Defendants have only made general allegations about bargaining with the union to an impasse, and have not set forth a genuine dispute of a material fact as required by *Burchett. Burchett*, 340 F.3d at 516. The Court will not conclude this is a lapsed CBA, and the Court rejects Defendants contention.

In conclusion, the Court has determined a reasonable finder of fact, could make no other conclusion, but that RDB Universal is a party to the 2010 CBA, as it signed the agreement, and its action and statements evidence it is bound to a CBA. However, a reasonable finder of fact could make multiple conclusions as to whether RDB was a party to the 2013 CBA, as its actions and statements could be supportive of a 2013 CBA. As such, to the extent Plaintiffs' motion asks for summary judgment on its claim in regards to the 2013 CBA, it is denied.

### b. *Liability of RDB to Plaintiffs through a CBA for principal damages*

Plaintiffs next claim RDB is liable for principal damages to the PDC Trusts and the Union for unpaid contributions and unrecovered dues pursuant to the CBA. An employer bound to a CBA shall make such contributions in accordance with the CBA, and a federal right of action exists,

when a party fails to perform under ERISA. 29 U.S.C. § 1145; see also *Cent. States, Se. & Sw. Areas Pension Fund v. Indep. Fruit & Produce Co.*, 919 F.2d 1343, 1347-1348 (8th Cir. 1990).

The Union also has an independent claim against RDB for unrecovered dues pursuant to the CBA. A Union has an independent claim for a breach of CBA. *Agathos v. Starlite Motel*, 977 F.2d 1500, 1509 (3d. Cir. 1992). For the purposes of summary judgment, a CBA is in effect, and summary judgment on the effectiveness of the 2013 CBA is inappropriate for summary judgment. A reasonable finder of fact may make other conclusions as to whether the 2013 CBA is in effect. Although the Court has determined there is a genuine dispute of material fact over which CBA is in effect, the Court has determined a CBA is in effect. Both the 2010 and the 2013 CBA incorporate the PDC Trusts, and require RDB to submit due remittances to the Union. Therefore, while the Court recognizes a CBA is in effect, the Court denies Summary Judgment on specific damages, as the specific CBA in effect is still a genuine issue of material fact in dispute.

   2. *Deloris Berry and Relder Berry's individual liability on the basis of the Guaranty.*

Plaintiffs claim Deloris and Relder Berry are both personally liable as individuals for the debts and liability of RDB based on a guaranty signed on April 15, 2013. [ECF No. 50 ¶ 8]. Defendants' response argues the guaranty is ambiguous and parol evidence is required to determine the true intent of the Berrys making summary judgment inappropriate on this claim. [ECF No. 57 at 12-13]. Plaintiffs' reply contends cases Defendants wish to show creating an ambiguity are not relevant, and ambiguity is a matter of law the Court can and should address at this point and time. [ECF No. 61 at 6-7].

Under Missouri Law to establish an enforceable guaranty, Plaintiffs must show:

"(1) that the defendant executed the guaranty, (2) that the defendant unconditionally delivered the guaranty to the creditor, (3) that the creditor, in reliance on the guaranty, thereafter extended credit to the debtor, and (4) that

11

there is currently due and owing some sum of money from the debtor to the creditor that the guaranty purports to cover."

*ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 382 (Mo. 1993) (citing *Linwood State Bank v. Lientz,* 413 S.W.2d 248, 256 (Mo.1967)). "The contract of guaranty must be construed strictly according to its terms, and no stretching or extension of its terms can be indulged in order to hold the guarantor liable on his guaranty." *Zoglin v. Layland*, 328 S.W.2d 718, 721 (Mo. Ct. App. 1959) (citing *Bank of Slater v. Harrington*, S.W. 496, 496 (1924)). Where an ambiguity exists within the contract, parol evidence is admissible to determine the intent of the parties. *Bank of Kirksville v. Small*, 742 S.W.2d 127, 133 (Mo. 1987). The determination of whether language is ambiguous is a question of law, and summary judgment is only appropriate when the language is ambiguous on its face. *Anderson v. Curators of Univ. of Missouri*, 103 S.W.3d 394, 399 (Mo. Ct. App. 2003). To test if an ambiguity exists, the disputed language, in the context of the entire agreement, must be susceptible to multiple meanings as understood by a reasonable person. *Klonoski v. Cardiovascular Consultants of Cape Girardeau, Inc.*, 171 S.W.3d 70, 73 (Mo. App. E.D.2005). The ambiguity must come from the four corners of the contract, and ambiguity cannot be created with the use of extrinsic evidence. *ATC Co. v. Myatt*, 389 S.W.3d 732, 735 (Mo. Ct. App. 2013) (citing *Teets v. American Family Mutual Ins. Co.,* 272 S.W.3d 455, 462 (Mo. App. E.D.2008)).

It is undisputed, Deloris and Relder Berry each signed a document labeled "Guaranty of Payment of Wages, Dues Remissions, Fringe Benefit Contributions and Other Miscellaneous Payments." [ECF No. 56 at ¶ 29]. The Union relied on the Guaranty to become a signatory to the CBA and extend credit. [ECF No. 56 at ¶ 30]. RDB is delinquent to the Plaintiffs, and RDB has not satisfied RDB's breach. [ECF No. 56 at ¶ 31]. While both parties dispute the amount of

Defendants' liability, both parties acknowledge Defendants have some liability to Plaintiffs. [ECF No. 60 at ¶D12].

Defendants argue the guaranty is ambiguous and parol evidence is required to determine the parties' intent. Defendants argue the use of the following terms are broad and ambiguous: "all existing and future indebtedness…", "various Trust Funds", "any subsequent collective bargaining agreements", and "any state local or federal law." [ECF No. 57 at 12]. Defendant cites *U.S. Suzuki Motor Corp. v. Johnson*, 673 S.W.2d 105, 107 (Mo. App. 1984), where the term "indebtedness" was held to be broadly defined in a guaranty and thus subject to ambiguity. [ECF No. 57 at 13]. Plaintiffs contend Defendants' cited cases are not relevant, and even if the Court requires extrinsic evidence, any evidence Defendants might submit is already present in the record. [ECF No. 61 at 7]. Plaintiffs also respond Defendants' intention is an unsupported assertion, not creating a genuine issue of material fact, and therefore not appropriate for summary judgment. [ECF No. 61 at 6].

Before reviewing the disputed contract language, the Court examines the entire guaranty in order to determine its purpose. [ECF No. 49-13]. The title of the document clearly states the document is guarantee of certain payments, and the preamble states: "The undersigned owners of the Company believe it is [their] best interests and in the best interests of the Company to guarantee the Company's obligations and payments pursuant to the collective bargaining agreement." *Id*. Defendants cite three phrases, they contend are ambiguous, but do not provide any support for why these terms are ambiguous other than blanket statements the terms are "vague and broad." The Court disagrees, and does not find these terms to be vague, and as a result there is no ambiguity in the terms provided by Defendants. Defendants also argue the phrase "indebtedness" is ambiguous, and provide more extensive argument, which the Court will further address.

Defendants argue "indebtedness" is ambiguous because past courts have held indebtedness to be overly broad, and cites *U.S. Suzuki Motor Corp.*, 673 S.W.2d at 107. In *U.S. Suzuki Motor Corp.*, the term "indebtedness" was ambiguous, because the indebtedness was subsequently assigned to a third party, and the guaranty was intended to be a series of continuing transactions between the two contracting parties. *Id*. This present case is distinguished, for two reasons: first, here the only one party looking to enforce the guaranty is a contracting party; and secondly, the guarantee specifies the indebtedness, stating: "all existing and future indebtedness of the Company to Union, its members and the Trust Funds." [ECF No. 49-13 at 2]. As such, this Court finds the Guaranty is unambiguous and parol evidence is not required to determine the parties' intent.

The Guaranty the Berrys signed is unambiguous, and the Court holds the Guaranty establishes Deloris and Relder Berry have guaranteed payment for obligations pursuant to the 2010 CBA, or any future CBAs between the parties.

### 3. Damages for Plaintiffs' claim

Plaintiffs contend they are entitled to Summary Judgment on damages, and characterize their damages into categories of: audit damages; post-audit damages; and liquidated damages, attorneys' fees, costs, and other reasonable damages.

Plaintiffs also request they should be allowed to submit a supplemental memorandum to detail, the amount of interest, attorney's fees and costs owed, and an additional memorandum with further damages, pending the results of their most recent audit of Defendants. [ECF No. 50 at 10]. Defendants contend damages are inaccurate and unsubstantiated, arguing: the audit procedures were inadequate, not independent, post-audit damages double counted damages from the audit period, and are not substantiated by evidence; liquidated damages pleadings do not contain enough information, attorney's fees are inappropriate because the CBA is unenforceable and Plaintiffs'

hands are unclean; and finally, the damages are not supported by reliable evidence. [ECF No. 57 at 4-9]. Plaintiffs reply argues as a matter of law, liquidated damages, interest, costs and attorneys' fees are mandatory on all principal obligations claimed and awarded to the PDC Trusts; damages are appropriately calculated through the use of affidavits, Defendants do not present specific facts creating a dispute; Plaintiffs' damages are more than adequately asserted, and the audit is reliable and uncontested. [ECF No. 61 at 9-11].

a. *Audit Damages.*

Plaintiffs begin their argument over damages with the contention they are entitled to Summary Judgment against RDB for damages from the audit submitted by Grabel Schneiders & Hollman, P.C. [ECF No. 50 at 9]. Defendants' response is the audit procedures were not independent, the audit was improper in its scope, and the audit does not include a payment made prior to the filing of the summary judgment motion. [ECF No. 61 at 4-5]. Plaintiffs reply in arguing the evidence presented is sufficient for the Court to make a judgment on damages, and the Defendants did not raise specific material facts to create a genuine dispute under FRCP 56(c)(1). Additionally, Plaintiffs refute Defendants contention there was work to be excluded under the CBA, as oral promises to disregard CBA text is not a defense, and the only person with the authority to exclude work did not exclude work. [ECF No. 61 at 11-12].

The audit is based on the wage rate in "the collective bargaining agreement," and the Court has determined the existence of a particular CBA is a matter of genuine factual dispute. [ECF No. 49-2 at 2]. In addition to the CBA, Defendants also point out assumptions to which they disagree and assumptions not supported by uncontested facts, such as: audit procedures and the inclusions of non-union employees. [ECF No. 49-2]. Defendants also argue the procedures are inadequate, citing limitations of the procedures and the stated purpose of the audit. [ECF No. 57 at 4].

Defendants further list specific facts they wish to dispute, including specific portions of the audits disclosure statements. They believe they can shed light on the audit's lack of independence. [ECF No. 57 at 4].

Defendants contend damages are inappropriate because the audit includes projects which were subject to exclusion from the audit, through an oral agreement. Oral modifications are not a defense to a CBA. *Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1153 (7th Cir. 1989). Here Defendants present no evidence of any written agreement excluding certain work from the audit, which would preclude summary judgment. While Defendants are entitled to all reasonable inferences of fact, they must place specific facts in dispute, and must have more than just general allegations. *Burchett*, 340 F.3d at 516. Defendants have not placed any specific facts in dispute in regards to a written exclusion. The Court determines Defendants are liable for any damages which are the result of work they aver is excluded from the CBA, as such exclusions are improper.

Defendants have placed specific facts in dispute, and this is more than a general denial. As the enforcement of the 2013 CBA remains a genuine issue of material dispute, calculating damages from an audit, based on the 2013 CBA is inappropriate for Summary Judgment.

### b. *Post – Audit damages*

Plaintiffs assert they are entitled to post-audit damages based on contribution reports submitted by RDB. [ECF No. 50 at 9-10]. Defendants' response contends the post-audit section of damages includes, six months of damages of time included by the audit, and claim Plaintiffs have not presented enough evidence to support Summary Judgment. [ECF No. 57 at 6]. Plaintiffs reply the post – audit damages specifically, do not include audit damages, and Plaintiffs post-audit damages are specifically pled. [ECF No. 61 at 13]. The Court notes, much of the evidence received

on post-audit damages is based on the 2013 CBA; and as the enforcement of 2013 CBA is a matter of material dispute, damages resulting from it would not be appropriate for summary judgment. Further as the audit is contention, determining judgments for just the time period after the audit seems disingenuous. Therefore, the Court denies summary judgment on this issue.

### c. *Liquidated Damages, interest, attorneys' fees, and reasonable costs*

Plaintiffs go on to claim ERISA and the CBA allow the PDC trusts to recover interest, liquidated damages, attorneys' fees, reasonable accounting fees, and other relief prescribed by law; and the Union is entitled to the above damages as a result of section 4 of the CBA under a LMRA breach of contract claim. [ECF 57 at 6]. Defendants contend Plaintiffs should not be entitled to an award of liquidated damages because they have not established the minimum requirements.

Under 29 U.S.C. 1132(g)(2) of ERISA, attorneys' fees, liquidated damages, and costs are all authorized when applied to the PDC Trusts claim. In an LMRA breach of contract claim, the goal of awarding damages is to put the parties in the position as if there had been no breach. The Union's claim for special damages is not required by law, but instead by contract. *Fire Sprinklers, Inc. v. Icon Contracting, Inc.* 279 S.W.3d 230, 235 (Mo. App. 2009).

"Subsection 1132(g)(2)(C)(ii) is the liquidated damages provision. It applies when (1) the fiduciary obtains a judgment in favor of the plan, (2) unpaid contributions exist at the time of suit, and (3) the plan provides for liquidated damages." *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir. 1989). A party can recover liquidated damages on unpaid contributions, if the contributions were unpaid at the time the suit was filed. *Carpenters & Joiners Welfare Fund v. Gittleman Corp.*, 857 F.2d 476 (8th Cir.1988). Other district courts have interpreted this not to bar recovery of liquidated damages related to contributions that became delinquent after the suit was filed. See *Trustees of Minn. Ceramic Tile &*

*Allied Trades Ret. Fund v. Legacy Tile & Marble, Inc.*, No. CIV. 06-2965 JNE/SRN, 2008 WL 624120, at *4 (D. Minn. Mar. 4, 2008).

The Court declines to enter summary judgment on this issue as there is a genuine dispute of material fact on which CBA applies, thus preventing the Court from giving a judgment on principal damages. Further, as the Court does not know which of the CBAs is in effect, it cannot award LMRA breach of contract claim, without knowing the identity of the language to apply.

B. *Defendants' Counterclaims of money had and received, breach of contract, and tortious interference with a contract of business expectancy.*

Plaintiffs argue they are entitled to summary judgment on each of Defendants' counterclaims: a claim of money had and received, a claim of breach of contract, and a claim of tortious interference, as no Defendant can maintain a cause of action for any claim, and ERISA and NLRA preempt the claim of tortious interference. Defendants' response argues, ERISA does not preempt their counterclaim as the claims do not "relate to any employee benefit plan," courts allow for a federal common law action in restitution, and the lapsed CBA allowed RDB to institute unilateral changes. [ECF No. 57]. Plaintiffs reply Defendants have not met their burden to plead and show lack of justification, the claims against the PDC Trusts are pre-empted by the ERISA, and if the Court finds RDB is not bound by a CBA, each claim is preempted as a labor dispute under NLRA. [ECF No. 61 at 7-8].

1. *ERISA preemption analysis of Defendants tortious interference of contract or business expectancy claim*

Before the Court analyzes the merits of any claim, there must be a determination of whether the claims are preempted under ERISA. Plaintiffs argue the claims are preempted as they not relate to an employee benefit plan. [ECF No. 50 at 17]. Defendants contend while their claim

does not relate to any the employee benefit plans, but instead it relates to tortious actions or omissions of agents of the Plaintiffs. [ECF No. 57 at 14].

Under § 1144(a), ERISA preempts any state law claim which "relates to" any employee benefit plan. See 29 U.S.C. §1144(a). A "law 'relate[s] to' a covered employee benefit plan for purposes of § 514(a) if it [1] has a 'connection with' or [2] 'reference to' such a plan." *California Div. of Labor Standards Enf't v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 324 (1997) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96-97 (1983)). State law claims need not specifically refer to employee benefit plans in order to be preempted; nor do the claims need to be designed to affect benefit plans. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 at 47–48 (1987). Some state actions involving ERISA are too tenuous or remote to warrant a finding they relate to an ERISA plan, and examples have included torts committed by an ERISA plan. *Bannister v. Sorenson*, 103 F.3d 632, 635 at (8th Cir. 1996) (finding some ERISA plans such as unpaid rent, failure to pay creditors, or some torts are not pre-empted by ERISA).

The 8th Circuit Court of Appeals has determined seven factors in order to analyze whether a claim is preempted

> "(1) whether the state law negates an ERISA plan provision, (2) whether the state law affects relations between primary ERISA entities, (3) whether the state law impacts the structure of ERISA plans, (4) whether the state law impacts the administration of ERISA plans, (5) whether the state law has an economic impact on ERISA plans, (6) whether preemption of the state law is consistent with other ERISA provisions, and (7) whether the state law is an exercise of traditional state power."

*Shea v. Esensten,* 208 F.3d 712, 718 (8th Cir.2000) (quoting *Ark. Blue Cross & Blue Shield v. St. Mary's Hosp., Inc.,* 947 F.2d 1341, 1344-45 (8th Cir.1991)). Courts must look at the totality of the state law's impact on the ERISA plan, and no one factor is determinative on the pre-emption issue. *Ark. Blue Cross & Blue Shield*, 947 F.2d at 1344-45.

The Court begins its analyses of whether tortious interference of contract or business expectancy is preempted by ERISA, by analyzing the factors the Eight Circuit provided in *Ark. Blue Cross & Blue Shield*. The Court notes, neither Plaintiffs nor Defendants cited this case, and many of the parties arguments are not directly on point.

The first factor the court addresses is "whether the state law negates an ERISA plan provision." Plaintiffs argue in favor of preemption because under 29 U.S.C. §1104, ERISA requires plan fiduciaries to discharge their duties to the plan for the purposes of providing benefits to plan participants and defraying the costs of plan administration. [ECF No. 50 at 17]. Courts have held this requires fiduciaries must consider the appropriateness of legal action to recover plan assets, although they do not need to institute a lawsuit in every instance. *Herman v. Mercantile Bank, N.A.*, 137 F.3d 584, 587 (8th Cir. 1998), *as amended on clarification* (Apr. 2, 1998) *see also Holdeman v. Devine*, 572 F.3d 1190, 1193-4 (10th Cir. 2009). "ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries, and that trustees." *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 571 (1985). Defendants argue these claims, do not relate to the plan directly but rather to the tortious actions of their agents, alleging Plaintiffs contacted general contractors and told these general contractors not to pay RDB for amounts owed, until the Union discrepancy was paid. [ECF No. 57 at ¶D10]. Plaintiffs' alleged actions are within their fiduciary duties as fiduciaries of the PDC trusts and within the realm of the defendants claim. Since Plaintiffs' actions were part of an attempt to recover unpaid benefits and was within their duties as fiduciaries of the benefit plans, in an attempt to recover monies due to the plans, these actions relate to the benefit plans. As such this factor is in favor of preemption.

The second and third factors of "whether the state law affects relations between primary ERISA entities" and "whether the state law impacts the structure of ERISA plans", will be addressed together. These two factors are treated alike. *Ark. Blue Cross & Blue Shield,* 947 F.2d at 1346. Primary ERISA entitles are "the employer, the plan, the plan fiduciaries, and the beneficiaries." *Id.* This is a suit between the employer and companies, and imposes constraints on their relationships. See *Thrailkill v. Amsted Indus. Inc.*, 102 F. Supp. 2d 1129, 1134 (W.D. Mo. 2000) (finding when state law claims not affecting the benefit plan were still weighed in favor of preemption on this factor, because they were brought against a primary ERISA entity). Therefore these factors are in favor of preemption.

The fourth factor is "whether the state law impacts the administration of ERISA plans." This factor weighs in favor of preemption as well. This is not a run of the mill tort suit or one where Defendants are seeking to recover unpaid rents, or past dues, as such suits would be pre-empted. *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 833 (1988). This, instead, alleges a tort, directly relating to the plans ability to recover unpaid dues thus affecting the administration of the plans. As it affects the administration of the plans, this weighs slightly in favor of preemption.

The fifth factor to address is "whether the state law has an economic impact on ERISA plans." This factor weighs against preemption, although only slightly. Further an indirect economic influence, such as paying damages for a tort, does not bind an ERISA plan into any particular choice, thus regulating the plan. *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 646 (1995). An economic impact has been found where the requested relief would involve payments to an employee stock ownership plan. *Eckelkamp v. Beste*, 315 F.3d 863, 870 (8th Cir. 2002). Case law on the analysis of this factor is sparse, and a

decision allowing tortious interference claims for past dues would have an effect, on the plans as it limit the plans and their trustees from taking appropriate action for recovery of past dues, but the economic effect would likely be indirect, and does not bind any ERISA plan into a particular choice, as it only bars certain actions. This factor weighs slightly in favor of nonpreemption.

The sixth factor to address is "whether preemption of the state law is consistent with other ERISA provisions." Where there are no relevant portions of ERISA consistent or inconsistent with the state tort at issue, this factor does not support a finding of preemption or nonpreemption. *See Wilson v. Zoellner*, 114 F.3d 713, 719 (8th Cir. 1997) (finding where the Court cannot say preemption would be inconsistent with or directly contrary to any relevant provisions of ERISA the factor did not support preemption or nonpreemption). ERISA requires a number of fiduciary duties of trust administrators as seen in 29 U.S.C. 1103(c)(1) and further specified in 29 U.S.C. 1104(a). However, the court does not, believe there is any specific provision of ERISA inconstant with or directly contrary to the tort, and thus this factor does not support preemption or nonpreemption.

The seventh and final factor to address is "whether the state law is an exercise of traditional state power." This factor weighs against preemption. The state cause of action involves adjudicating tort claims in its courts, and Missouri has long recognized the tort of tortious interference with contract or business relations. *See Wilson,* 114 F.3d at 719–720. 718. *Prudential Ins. Co. of Am. v. Doe*, 46 F. Supp. 2d 925, 936 (E.D. Mo. 1999). Accordingly this factor weighs in favor of nonpreemption.

In reviewing all of the factors, the factors weigh is in favor of preemption, and Defendants tortious interference of business or contract expectancy claim is therefore preempted, and denied. As the court has determined ERISA preempts claims of tortious interference the Court declines to

address the merits of Defendants' claim of Tortious Interference. Accordingly, the court will grant Plaintiffs' Summary Judgment motion denying Defendants' claims of tortious interference of contract or business expectancy.

2. *NLRA preemption analysis of Defendants' claim of tortious interference of contract or business expectancy*

Plaintiffs argue NLRA's exclusive jurisdiction over labor disputes preempts RDB's claim, since a labor dispute existed throughout the time the alleged double payments were made. [ECF No. 50 at 17]. Defendants do not address NLRA preemption in their response, and Plaintiffs' reply restates its arguments from its motion in support in summary judgment.

"Labor dispute" is defined in the NLRA as "any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in proximate relation of employer and employee." 29 U.S.C. § 152(9). "The definition of labor dispute under the NLRA is very broad and "rarely have courts found concerted union activities to fall outside this broad definition." *Beverly Hills Foodland, Inc. v. United Food & Commercial Workers Union, Local 655*, 39 F.3d 191, 195 (8th Cir. 1994) (citing *Hasbrouck v. Sheet Metal Workers Local 232*, 586 F.2d 691, 694 n. 3 (9th Cir.1978)).

The dispute over past due union contributions and check off fees can be seen as a labor dispute, as the contributions and check off fees are a condition of employment, especially considering the broad definition of labor dispute under the NLA. As such, Defendants claim of tortious interference, to the extent the claim is not preempted by ERISA is preempted by the NRLA.

3. *Defendants' money had and received claim*

Plaintiffs argue no Defendant can maintain a cause of action for a claim of money had and received. Defendants argue a federal common law claim of restitution is appropriate similar to 29 U.S.C. § 1103(c)(2)(A)(ii). Plaintiffs reply such a claim is inappropriate because Defendants have not pled restitution is inequitable. [ECF No. 61 at 8].

For a claim of money had and received a party under Missouri Law "must establish the following elements: (1) that the defendant received or obtained possession of the plaintiff's money; (2) that the defendant thereby appreciated a benefit, and (3) that the defendant's acceptance and retention of the money was unjust. " *Kohrs v. Family Support Div., Missouri Dep't of Soc. Servs.*, 407 S.W.3d 85, 87-88 (Mo. Ct. App. 2013) (quoting *School Dist. of Kansas City, Missouri v. Missouri Bd. of Fund Comm'rs,* 384 S.W.3d 238, 272 (Mo.App. W.D.2012)).

The law permits plan benefit trusts to return contributions made as a mistake of fact or law, if the contributions are requested to be returned within a timely manner. 29 U.S.C. § 1103 (2016). Federal courts have also created a common law action for restitution of mistaken payments made to an ERISA Plan. *Greater St. Louis Const. Laborers Welfare Fund v. Park-Mark, Inc.*, 700 F.3d 1130, 1135 (8th Cir. 2012). Several circuits have also allowed a federal common law action for restitution, after parties have sought a state law restitution claim. *UIU Severance Pay Trust Fund v. Local Union No. 18-U, United Steelworkers of Am.*, 998 F.2d 509, 512 (7th Cir. 1993). However, parties requesting a refund must show restitution is "equitable under the circumstances," and the Eight Circuit has previously used the following as factors in determining if restitution is equitable:

> (1) are unauthorized contributions the sort of mistaken payments that equity demands be refunded? (2) has the Union delayed bringing this action for so long that laches, or some other equitable defense, bars recovery? (3) in the same vein, has the Union, by continuing the payments for years without apparent question, somehow ratified past payments? and (4) since the Fund has agreed that it is not entitled to keep the disputed amount in any event, can the Union demonstrate that the party from whom it seeks payment would be unjustly enriched if recovery were denied?

*Park-Mark, Inc.*, 700 F.3d at 1135. Where affidavits concluded the employer made payments for hours worked outside of the scope of the CBA, a mistake of fact was found. *Id.*

### a. Relder Berry and Deloris Berry's cause of action as individual defendants

The Plaintiffs first argue Deloris Berry and Relder Berry cannot maintain a cause of action, as no Plaintiff ever received or obtained any of Deloris or Relder Berry's monies as a double payment of vacation pay or check off dues. [ECF No. 50 at 13]. Defendants do not dispute this fact in their opposition brief, and do not provide or produce any facts which show there is a genuine dispute as to this issue. Therefore, there is no genuine issue of material fact, and summary judgment is proper in denying Relder Berry and Deloris Berry's claim for Summary Judgment.

### b. RDB's claim of federal restitution

Plaintiffs also maintain RDB is unable to maintain a cause of action for money had and received, as the amount was used for the intended purposes, RDB did not meet the required trust contribution return dates, and restitution from the trusts would be inequitable. [ECF No. 50 at 13]. Defendants assert courts have allowed a right of action for overpayment under ERISA, despite ERISA's tight requirements of a shorter window. [ECF No. 57 at 15]. Plaintiffs' response is these claims are pre-empted by NLRA, and even if they are not pre-empted restitution is inequitable and should not be granted. [ECF No. 61 at 8].

A federal claim of restitution requires a mistake of law or fact, leading to the overpayment of monies due in ERISA, and it must be equitable to return the money. *Park-Mark, Inc.*, 700 F.3d at 1135. RDB made overpayments in the amount of about $25,000, paying the same amount once to the PDC Trusts, and once directly to its employees. [ECF No. 60 at ¶D7]. RDB properly pleads the first step in alleging a federal common law claim for restitution in alleging a mistake of law or fact existed, by alleging it paid both the PDC trust funds and its individual employees the same

amount of money, or at the very least a genuine issue of material fact exists over whether a mistake of law or fact occurred. RDB also alleges it was tortious and thus inequitable for Plaintiffs to thwart their attempts to have the money returned to them by the funds or the individual employees.

Plaintiffs allege restitution is inequitable as RDB intended to submit these payments to the PDC trusts, and the money submitted was the correct amount, and used for its intended purpose. [ECF No. 50].

The Court now begins its analyses of the factors in *Park-Mark, Inc.* in order to determine if restitution is equitable. The first factor is: "are unauthorized contributions the sort to mistaken payments that equity demands be refunded?" The contributions made are the sort of mistaken payments that equity demands to be refunded, as RDB has allegedly paid both the PDC trusts and individual employees. RDB is not seeking a windfall, and has attempted to recover the monies already through its employees. This factor weighs in favor of the Defendants.

The second factor is "has the Union delayed bringing this action for so long that laches, or some other equitable defense, bars recovery?" RDB has also not delayed in bringing this action, and prior to litigation tried a number of different methods to recover the monies, from either its employees or the funds itself. [ECF No. 60 at ¶¶D7-D8]. RDB has not delayed in attempting to recover the monies, and therefore this factor weighs in favor of the Defendant.

The third factor is has RDB, "by continuing the payments for years without apparent question somehow ratified past payments?" RDB upon determining the mistake, immediately ceased the payments, so it cannot be said RDB ratified the mistake in any fashion. [ECF No. 60 at ¶D9]. This factor weights in favor of the Defendants, as Defendants have not somehow ratified the payments with past payments.

The fourth factor is can RDB "demonstrate that the party from whom it seeks payment would be unjustly enriched if recovery were denied?" Plaintiffs contend it is inequitable to return the money to Defendants as the money they were paid was the correct amount of money and it was used for the intended recipients. [ECF No. 61 at 8]. It appears the party whom is unjustly enriched, is not the PDC trusts or the Union, from whom recovery is sought, but rather the individual Union members. However, if an employer makes a contribution that causes an employee to realize or enjoy a benefit, then that employer is not entitled to a refund. *UIU Severance Pay Trust Fund v. Local Union No. 18—U, United Steelworkers of Am.*, 998 F.2d. 509, 549 (7th Cir.1993) (*citing Constr. Indus. Ret. Fund of Rockford, Ill. v. Kasper Trucking, Inc.*, 10 F.3d 465, 467 (7th Cir.1993)). This factor weighs in favor of the Plaintiffs, as they are not being unjustly enriched.

An analysis of the factors, could show, in total, it is equitable to require Plaintiffs to return the money to defendants. Based on this a reasonable finder of fact could determine, Defendants have a claim, and as such summary judgment is inappropriate.

### 4. *Defendants' claim of breach of contract*

Plaintiffs next argue they are entitled to Summary Judgment on Defendants' claim for breach of contract, because neither the Berrys' nor RDB can maintain a cause of action. Defendants do not address this claim in their opposition motion to Summary Judgment.

To establish a claim for breach of contract in Missouri, the claimant must demonstrate: "'(1) a contract between the plaintiff and the defendant; (2) rights of the plaintiff and obligations of the defendant under the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff.'" *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1055 (E.D. Mo. 2009) (citing *Teets v. American Family Mut. Ins. Co.,* 272 S.W.3d 455, 461 (Mo.Ct.App.2008).

### a. *Relder Berry and Deloris Berry's claim as individuals*

Plaintiffs allege neither Deloris nor Relder Berry are able to maintain a cause of action for breach of contract because they are not parties to the collective bargaining agreement as individuals, nor are they third party beneficiaries to the CBAs at issue. Defendants did not address this claim in their opposition motion for summary judgment.

The Berrys as individuals are unable to maintain a cause of action for breach as the Berrys have not mentioned specifically which contract they intend to state is in breach. The Counterclaim only mentioned one contract, the collective bargaining agreement, and Defendants have admitted the collective bargaining agreement does not apply to the Berrys as individuals. [ECF No. 65 at P7]. As such the claim of breach of contract fails at its outset as the contract is not between the two contracting parties, and the Court will grant Plaintiffs' Summary Judgment on this claim and deny Deloris Berry and Relder Berry's claim for breach of contract.

### b. RDB's claim of breach of contract

Plaintiffs next allege RDB cannot maintain a cause of action for breach of contract because there are no allegations RDB was unpaid or suffered a pecuniary loss, and the allegations in its counterclaim says the same monies were allegedly doubly paid, and Plaintiffs interfered with the business relationship of Defendants and third parties which employed Defendants. [ECF No. 50 at 16]. Defendants did not specifically address Plaintiffs arguments in their memorandum opposing summary judgment.

RDB in its counterclaim pled Plaintiffs breached a contract by retaining money, and by committing tortious acts against Defendants. Defendants' allegations, do not show how the contract only was breached, rather alleged only tortious actions, and there is no allegation RDB was unpaid or that RDB suffered a pecuniary loss as a result of the breach of contract. This is only a general allegation which does not defeat Summary Judgment, as it has not placed any specific

facts in dispute. *Burchett*, 340 F.3d 510 at 516. As such the Court determines, RDB has not made a breach of contract claim, and Plaintiffs Summary Judgment motion is granted.

### C.   Defendants Demand for a Trial by Jury

Defendants have also made a demand for trial by jury of Plaintiffs' Complaint and Defendants' Counter Claim. [ECF No. 34].  Defendants did not file a demand for jury trial along with a response to their initial answer filed on December 12, 2014, and first demanded a jury trial on June 11, 2015 when they filed a motion for leave to file a counterclaim.

Under FRCP Rule 38, a party's Seventh Amendment right to a jury trial is waived, unless they make a demand within 14 days after the last pleading at issue is served. Once the right is waived, the right is revived only as to new issues. *Williams v. Farmers & Merchants Ins. Co.*, 457 F.2d 37, 38 (8th Cir. 1972). Defendants, did not raise any counterclaims in their initial answer, nor do they address the issues now raised in their counterclaim. [ECF No. 12]. Therefore, Defendants right to a jury trial is revived on any triable issues in their counterclaims.

Defendant's sole remaining claim is RDB's claim of money had and received against the Plaintiffs.  The right to a jury trial under the seventh amendment depends on the nature of the issue to be tried. *In re Vorpahl*, 695 F.2d 318, 322 (8th Cir. 1982).  RDB's action is essentially an action for restitution, an equitable remedy for which there is no Seventh Amendment right to trial. *Crews v. Cent. States, Se. & Sw. Areas Pension Fund*, 788 F.2d 332, 338 (6th Cir. 1986) (holding the right to a jury trial was denied for an action of mistaken contributions under 29 U.S.C. §1103(c)(2)(A)). Therefore, Defendants do not present a new claim to which a right to jury trial exists, and Defendants demand for jury trial is properly denied.

## IV. CONCLUSION

The Court has determined summary judgment is inappropriate on Plaintiffs' claims; while Defendants are bound to a CBA, it is a genuine dispute of material fact, if they are specifically bound to the 2013 CBA. As Defendants are bound to a CBA, they are liable for unpaid principal amounts. Further, as such the Court cannot determine damages as part of this summary judgment motion. The Court has determined as a matter of law that the Guaranty signed by Deloris Berry and Relder Berry binds them as individuals to any liability of RDB Universal. The Court also has determined Summary Judgment is appropriate on each of the Defendants' counterclaims, except RDB Universal's claim for money had and received, as a federal restitution claim. Finally, the Court denies Defendants demand for a jury trial on its remaining claim of money had and received, as it is an equitable remedy for which there is no right to trial.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs Motion for Summary Judgment is hereby GRANTED in PART and DENIED in part. [ECF No. 48].

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment is GRANTED, on the issue of whether Defendant RDB Universal is bound to a Collective Bargaining Agreement as explained in the above memorandum.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment is GRANTED, finding Defendants Deloris Berry and Relder Berry are bound as individuals through the terms of the Guaranty referenced in the above memorandum. [ECF No. 49-13].

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment on Defendants' counterclaims of tortious interference and breach of contract are DENIED.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment is GRANTED on Defendants' Relder Berry and Deloris Berry counterclaims of money had and received, and DENIED for Defendant RDB Universal's counterclaim of money had and received.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment in all other respects relating to their claims is DENIED.

**IT IS FURTHER ORDERED** that Defendants' Demand for a Trial by Jury is hereby DENIED. [ECF No. 34].

So Ordered this 6th Day of April, 2016.

_____
**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**