UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PAINTERS DISTRICT COUNCIL NO. 58, et al., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 4:14CV01812 ERW ) |
| RDB UNIVERSAL SERVICES, LLC et al., | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court after a non-jury trial to address the claims asserted by Plaintiffs[1] in their Complaint [ECF No. 1] against RDB Universal Services, LLC, Deloris Berry, and Relder Berry.[2] A two-day bench trial on these matters was held before this Court on January 17 and 18, 2017. The Court makes the following findings of fact and conclusions of law. Fed. R. Civ. P. 52(a).

**I.  FINDINGS OF FACT**

Plaintiffs bring this suit under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and the Labor Management Relations Act ("LMRA"), 29

---

[1] Plaintiffs include the following: Painters District Council No. 58, Gregg Smith, in his capacity as Business Manager of Painters District Council No. 2, Painters District Council No. 2 Pension Trust, Painters District Council No. 2 Welfare Trust, Painters District Council No. 2 Vacation Trust, and Painters District Council No. 2 Apprenticeship and Journeyman Training Trust, By and through Gregg Smith, David Doerr, Rich Lucks, William Boevingloh, Carl Farrell, Donald Thomas, Daniel Weinstroer, Michael Smith, Daniel Hanson, Steve Phillipp, Jr., Mark Borgmann, Michael Slattery, Joseph Keipp, Tim Weis, and Fred Phillip, Jr. in their representative capacities as trustees of the Painters District Council No. 2 Pension, Welfare, Vacation and Apprenticeship and Journeyman Training Trusts.
[2] Plaintiffs Deloris and Relder Berry filed a Petition of Bankruptcy on September 9, 2016. Pursuant to the terms of the Order on Motion for Relief from Stay of the Bankruptcy Court, this action is proceeding solely against RDB Universal Services, LLC.

1

U.S.C. § 141, *et seq.* against Defendant RDB Universal Services, LLC ("Defendant"). Plaintiffs are a labor organization with principal offices in St. Louis, Missouri, and trusts, which are administered within the Eastern District of Missouri. Defendant was doing business in St. Louis, Missouri at all relevant times, and its principal office is located in St. Louis, Missouri. Jurisdiction and venue are proper.

Plaintiffs allege the following. Defendant was bound by a collective bargaining agreement ("CBA") since April 15, 2013. The CBA required Defendant to submit fringe benefits and dues remissions for each hour worked by covered employees at the rate and manner specified in the CBA. Defendant was also required to submit weekly reports and contributions on all covered employees, showing the number of hours worked and the contributions due. Since August 9, 2014, Defendant has failed to file accurate reports of the hours worked. Plaintiffs ask the Court to enter an order requiring Defendant to satisfy its contractual obligations by paying all principal amounts due, liquidated damages, attorneys' fees and costs.

Defendant filed a counterclaim against Plaintiffs, alleging three counts, all of which were dismissed by the Court in its ruling on summary judgment. At summary judgment, the Court determined Defendant is liable for benefits and dues, but it did not determine the amount of damages owed. After summary judgment and prior to trial, Deloris and Relder Berry filed notice with the Court they had filed for bankruptcy. The Bankruptcy Court lifted the automatic stay as to Defendant for the purpose of determining amounts owed to Plaintiffs. The two remaining issues to be determined at trial are which CBA was in effect throughout the relevant time period, and how much in damages is owed by Defendant.

At the two-day bench trial on this matter, Plaintiffs presented their case-in-chief by calling witnesses Greg Smith, Charles Kinder, Angela Sucharski, Daniel Wienstroer and Deloris

Berry as the corporate representative of Defendant, through live testimony and depositions. Defendant called Becky Schwab and Deloris Berry, as the corporate representative of Defendant. The Court makes the following findings of fact based on the evidence presented and the reasonable inferences derived therefrom.

Defendant entered a CBA with Plaintiffs on April 15, 2013. Ex. P1. The CBA in effect at that time began on September 1, 2010, and was effective until August 31, 2013. Trial Tr. Vol. 1, 25:15-16; Ex. P1. The parties agreed to a new CBA which began September 17, 2013, and was effective until August 31, 2016. Trial Tr. Vol. 1, 28:17-20; Ex. P2. The Finishing Contractors Association of St. Louis, otherwise known as the Painting Decorator Contractors of America ("FCA/PDCA"), represent employers and bargain with Plaintiffs for new CBAs. Weinstroer Dep. Tr. 6:6-22 When an employer signs a CBA, the employer agrees the association will represent the employer for the current CBA and all future CBAs unless notice is provided of the employer's intent to withdraw. Weinstroer Dep. Tr. 10:4-12. The second CBA was not signed by Defendant but would have been signed by the association on behalf of Defendant.[3] Trial Tr. Vol. 1, 68: 16-20. Plaintiffs never received notice from Defendant regarding termination of the CBA or rescission of their bargaining rights from Plaintiffs. Trial Tr. Vol. 1, 28:5-6, 9-11; 31:9-16.

The rates required to be paid to each fund for each employee are contained in the CBA, as well as the liquidated damages to be paid for late payments. Trial Tr. Vol. 1, 44:2-7, 17-23; 57:10-14. An employer is required to pay benefits for employees who are part of the union, no matter what type of work they are doing. Trial Tr. Vol. 1, 76:23-77:5; 101:1-5.

---

[3] The FCA/PDCA negotiates and agrees to a new CBA on behalf of all employers who are a part of the association and have agreed to assign their bargaining rights to the FCA/PDCA.

Charles Kinder conducted a payroll audit on Defendant for the time period of June 1, 2013, to August 31, 2014. Trial Tr. Vol. 1, 127:20-22; Ex. P4. A payroll audit examines hours worked by union employees that went unreported, consequently, benefits were not paid for those hours. Trial Tr. Vol. 1, 119:23-120:5. The audit does not examine reports filed that were accurate but unpaid or paid late. Trial Tr. Vol. 1, 122:16-21. If an employee was not a painter or a member of the painters' union, it was not included in Mr. Kinder's audit. Trial Tr. Vol. 1, 138:15. He discovered 4,324.4 hours were unreported resulting in an amount due of $65,803.77 for principal, and $19,081.52 for liquidated damages. Trial Tr. Vol. 1, 128:1, 5-6; Ex. P4. The total amount due, including the costs of the audit, is $89,997.94. Trial Tr. Vol. 1, 128:12, Ex. P4.

Angela Sucharski works for Benesys, the third party administrator for Plaintiffs. Trial Tr. Vol. 2, 4:12-13. She administrates the trust funds for Plaintiffs. Trial Tr. Vol. 2, 5:12-13. Employers submit reports of the number of hours worked for each employee each week and a check to pay the benefits owed for each employee for the week. Trial Tr. Vol. 2, 7:10-8:5. A report is not entered until full payment for the week has been received. Trial Tr. Vol. 2, 11:12-18. For reports submitted with no payment by Defendant, $108.825.58 is owed for the time period July 25, 2015 to October 24, 2015. Trial Tr. Vol. 2, 24:7-12; 30:7-11; Ex. P8. The liquidated damages owed on this amount, as of January 17, 2017, are $37,755.06. Trial Tr. Vol. 2, 30:17-21; Ex. P8. For reports where some payment was made, but not the full amount, for the time period of September 27, 2014, through July 4, 2015, $18,023.69 is owed. Trial Tr. Vol. 2, 37:21-24; Ex. P9. Additional liquidated damages in the amount of $16,669.42 are owed for reports where payment was made but late for the time period August 9, 2014, through October 24, 2015. Trial Tr. Vol. 2, 41:3-6; Ex. P10. These amounts do not cover the same time period or delinquencies as the payroll audit. Trial Tr. Vol. 2, 54:23-55:5. All payments received from

Defendant have been credited to the amounts owed to Plaintiffs. Trial Tr. Vol. 2, 56:2-6. The total amount of damages, which includes principal benefits unpaid, amount owed on unreported hours, and liquidated damages, is $271,271.69.

## II. CONCLUSIONS OF LAW

There are two issues which the Court needs to decide in this matter. First, which CBA is in effect, and second, the amount of damages owed to Plaintiffs. The CBA in effect is the CBA covering 2013 to 2016. When Defendant signed the original CBA, it agreed the FCA/PDCA will represent it for the original CBA and all future CBAs, unless Defendant serves timely notice to withdraw. Ex. P1, pg. 3. The testimony from several witnesses was no timely notice was given to Plaintiffs or to FCA/PDCA that Defendant wished to withdraw from the agreement. A new CBA was negotiated by the FCA/PDCA, which had the power to enter into the CBA on behalf of Defendant. Even though Defendant did not sign the new CBA, it is still bound by the terms of the agreement, because it assigned it's bargaining rights to the FCA/PDCA when it agreed to the original CBA.

Defendant shall pay Plaintiffs damages in the amount of $271,271.69. This includes amounts owed to the various trust funds and liquidated damages. The fringe benefits owed were calculated using the amounts required by the CBA. Ex. P2, pg. 14. Defendant argued payment is not required for employees who are covered by the CBA, but doing other work, such as a painter acting as a laborer. However, the CBA requires benefits be paid for all hours worked by a covered employee, no matter the nature or character of the work performed. Ex. P2, pg. 23. Additionally, Defendant did not provide any evidence of what amounts should be subtracted from the amount owed due to non-painting work. The total amount of benefits due to Plaintiffs for hours reported but unpaid is $126,849.27. In addition to this amount, the payroll audit

5

revealed Defendant owes Plaintiffs $89,997.94. This amount includes principal owed to the trusts, liquidated damages for the principal amount calculated in the audit, and the costs of the audit.

According to the CBA, an employer is assessed liquidated damages of 10% for the first thirty days of delinquency, and 1.5% shall be assessed compounded monthly until full payment is made. Ex. P2, pg. 7. Liquidated damages cannot exceed 20% of the principal amount due. 29 U.S.C. §1132(g)(2)(C)(ii). The CBA requires liquidated damages for delinquent payments. Employers are required by statute to make contributions in accordance with the terms and conditions of the CBA. 29 U.S.C. § 1145. Testimony indicated Defendant owes Plaintiffs liquidated damages in the amount of $54,424.48. In total, Defendants shall pay Plaintiffs $271,271.69.

Plaintiffs are entitled to attorneys' fees and costs which will be calculated by the Court after Plaintiffs have submitted a motion with supporting evidence of the costs and fees incurred in this matter. 29 U.S.C. § 1132(g)(2).

Accordingly,

**IT IS HEREBY ORDERED** that judgment shall be entered on behalf of Plaintiffs and against Defendant RDB Universal Services, LLC, as follows;

**IT IS ORDERED** that Defendant RDB Universal Services, LLC shall pay Plaintiffs $271,271.69;

**IT IS FURTHER ORDERED** that Plaintiffs shall inform the Court within twenty days of this order whether they wish to dismiss this action against Defendants Deloris and Relder Berry or proceed in a different manner;

**IT IS FURTHER ORDERED** that Defendant RDB Universal Services, LLC shall pay Plaintiffs attorneys' fees and costs, the amount to be determined by the Court after Plaintiff has filed appropriate supporting documents.

An Order of Judgment will be issued together with this Memorandum and Order. So Ordered this 24th Day of May, 2017.

*[Signature: E. Richard Webber]*

**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**